UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| REBECCA SHILDMYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:06-CV-57-TS |
| | ) | |
| MARION COMMUNITY SCHOOLS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

The Defendant Marion Community Schools asks this Court to grant summary judgment on the claims Plaintiff Rebecca Shildmyer has brought against it. The Plaintiff filed her Complaint on March 1, 2006. The Complaint asserts that the Defendant forced the Plaintiff to retire from her position as secretary for the Defendant because of her age, in violation of the Age Discrimination in Employment Act. She also claims she was not hired to other positions because of her age. For the reasons stated below, the Defendant's motion for summary judgment is granted on all claims.

**A.    Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party."

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate time for discovery, summary judgment must be given against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.

Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.      Material Facts**

The Plaintiff began working for the Defendant as school records secretary in 1988. For the next 16 years, she worked as a secretary in a variety of responsibilities. In 1997, she worked at Marion High School in the discipline office. Before the 2004–2005 school year, the Defendant hired John Gardner as principal of Marion High School. Gardner reorganized the secretaries into grade level assignments, and assigned the Plaintiff to be the eleventh grade secretary. Throughout her employment with the Defendant, the Defendant gave her positive evaluations.

The only body that can hire or fire school employees is the school board. The Marion School Board makes building level administrators responsible for initial interviews for open positions in their buildings. After interviews, the building administrator makes a recommendation. It is reviewed by the human resources department and the superintendent. Ultimately the school board makes the final choice to hire or fire.

The Defendant has had budget shortfalls over the past several years. As a result, the Defendant has closed or consolidated schools, eliminated administrative positions, and laid off non-educational employees. During the 2003–2004 school year, the Defendant conducted several studies regarding the Defendant's financial outlook. One study showed that the Defendant was overstaffed with clerical and administrative employees when compared with similar school corporations. Also, it was found that its secretaries were paid more than their counterparts in other schools and in other government employment. On July 1, 2004, the Defendant froze secretarial wages at the top levels. A second study confirmed that the Defendant was paying its clerical personnel more than any counterparts in the region. As a result of this second study, the School Board decided to restructure all of its clerical positions with the hope of reducing staff

4

and lowering non-educational expenses.

On June 1, 2005, the Superintendent of Marion Schools, Dr. Andrew Nixon, gave a presentation to the Defendant's secretaries about cost-cutting measures the Defendant was pursuing. The presentation explained the strategies for cutting administrative costs, which included reducing salaries, downsizing non-instructional personnel, and reducing all budget areas. The presentation also stated what it expected the outcome of its reorganization to be: reductions in salaries, changes in pay structure so pay reflected skill and responsibilities, and preservation of the most valuable employees. All job descriptions would be revised, compensation and work hours would be reviewed and modified, and some positions would be eliminated and a fewer number of new positions would be created. The selection criteria for the new positions was listed as follows: "specific skill sets;" "talent and other demonstrable proficiencies;" "previous responsibility factors, experiences;" "relevant employment training;" "relevant work experience;" "educational background, knowledge;" "technical proficiencies, expertise;" and "previous managerial and supervisory experience." (Nixon Aff. Ex. F, DE 21-9.) The employees were told that they would have 24 hours to reapply for their current position and 48 hours to express interest in any other position.

On June 2, 2005, Gardner met with the Plaintiff and the other secretaries in private, individual meetings. He used a flowchart showing the positions after restructuring. The flowchart showed that the eleventh and twelfth grade secretary positions would be combined into one position. No names were listed on the flow chart. Gardner told the Plaintiff that the twelfth grade secretary, Karen Yanis, would be the eleventh and twelfth grade secretary. Gardner told the Plaintiff to apply for the treasurer's job. Gardner had previously suggested to the Plaintiff

that she apply for the treasurer position. In December 2004, and again in Spring 2005, Gardner told her that he wanted her to be the bookkeeper, and that he would get the person who had the job at that time to retire. Because of Gardner's suggestions, the Plaintiff thought she would become treasurer.

Gardner stated at his deposition that "right after the meeting with Dr. Nixon" he told the Plaintiff that she would definitely have a grade level secretary position. (Def. Ex. B, Gardner Dep. 60, DE 23-4.) He then said that he "told everybody, that if you would like to retain your job, you will all . . . well, that's not a problem, everybody would be fine." (*Id.*) He said at the meeting, there was nothing official in writing, but he thought that she knew she had a position as a grade level secretary. However, when asked again whether anyone told the Plaintiff "you will have a grade level secretary position," Gardner responded that he "never had the opportunity because the Plaintiff left for a vacation in Arizona." (*Id.* at 62.) The contradictory testimony prevents the Court from determining whether Gardner told the Plaintiff she would have a grade level secretary position at this time, because for purposes of summary judgment, the Court resolves disputes to favor the Plaintiff.

After meeting with Gardner, the Plaintiff wrote to reapply for her eleventh grade secretary position and to apply for the treasurer position. When the Plaintiff discovered that executive assistant positions and other receptionist/secretary positions were available outside of the high school, she applied for those positions as well as the eleventh grade secretary position and the treasurer position. One executive assistant position was for Director of Support Services, and the other was for Assistant Superintendent Personnel. The Support Services position required an associate's degree in office management or comparable training. The Personnel

6

position required an associate's degree in office management, human resources experience, or comparable training. A Bachelor's Degree in a business or a personnel related area was recommended for the Personnel position.

On April 25, 2006, the Plaintiff sent Mr. Gardner a memorandum asking to take vacation from June 7 to June 30. Gardner wrote back suggesting she talk to him about it because of "major job shifts that are potentially on the horizon," and that she needed more information before being gone so long. (Gardner Dep. Ex. 17, DE 23-5.) After talking to the Plaintiff, Gardner approved the request on April 26, 2005.

Because the Plaintiff was leaving for vacation on June 7, Gardner briefly interviewed her for the treasurer position on June 6. The Plaintiff was Gardner's first choice for treasurer.

The treasurer position has two supervisors. The building level administrator, Gardner, and the central office business department, headed by the school's Chief Financial Officer Paul Gabriel. After interviewing the Plaintiff, Gardner told Gabriel he was thinking of the Plaintiff for the treasurer's position. Gabriel responded that he would not be able to support that decision, and that the Plaintiff was not an option. Gabriel stated that he did not think she could maintain confidentiality, an important concern for the treasurer position. Gabriel said there had been concerns about that over the years, and cited an incident involving the Plaintiff that occurred about a week earlier. The incident concerned a confidential communication Nixon sent to cabinet members containing ideas about the process of reducing the number of secretaries. Somehow, the Plaintiff had gotten the document and faxed it to another secretary in the central office.

Even though Gabriel did not want to hire the Plaintiff to be treasurer, and her old job responsibilities had been given to Karen Yanis, Gardner assumed the Plaintiff knew she would

7

remain a grade level secretary. Gardner states that, had she not retired, the Plaintiff would have worked as the ninth grade secretary in the 2005–2006 school year. On June 22, he sent a document to Nixon listing the Plaintiff as the ninth grade secretary for the 2005–2006 school year.

Having eliminated the Plaintiff from consideration for the treasurer position, the Defendant hired Mychele Monks to be treasurer. Monks interviewed with Gardner for the position during the first week of June. The interview lasted for at least a half hour. She then interviewed with the business department. Monks had worked for the Defendant in various capacities since 1994. In 2003 and 2004, she worked as the director of in-school support at McCulloch elementary school. During this time, she received excellent or above average ratings on her evaluation forms. From November 2004 to June 2005, Monks worked as a treasurer for the Defendant in its Career and Technology Center. On June 22, Monks was approved by the school board as treasurer at the high school, but she was not notified until sometime in July.

The Plaintiff never heard anything about the other positions she had applied for. The Defendant states that the Plaintiff did not have an associate's degree in office management or comparable experience, and so it did not consider her for the executive assistant positions. As for the receptionist/secretary position, the Defendant hired an individual older than the Plaintiff and the Plaintiff abandoned her claims relating to that position.

Before leaving for Arizona, the Plaintiff asked the payroll coordinator Sylvia Pinkerton what she needed to do if she was not offered a position. Pinkerton told the Plaintiff that her contract ended on June 30, and that if she did not retire by June 30, she would lose her full benefits.

While in Arizona, the Plaintiff called Gardner several times and was able to connect with him on one attempt. Gardner told her that Gabriel liked Mychele Monks, and that Gabriel had problems with the Plaintiff. The Plaintiff asked what the problems were, and he responded that they were confidential so he could not tell the Plaintiff. The Plaintiff said Gardner told her over the phone that "he would have a job for [her]" and he would get back to her. (Shildmyer Dep. 95, 137, DE 23-3.) He never called back to her, and he never offered her a position. Gardner's secretary Linda Osborne asked Gardner at least twice whether he had contacted her, and he said he had not. He did not tell her she would be the ninth grade secretary because he "chickened out," knowing she was upset at not getting the treasurer position. He planned to wait until she got back from vacation and "put things together at that time." (Gardner Dep. 105, DE 30-2.)

After returning from vacation, the Plaintiff talked to Osborne, who told the Plaintiff that she had a job. The Plaintiff responded that no one had told her she had a job. Osborne said that she knew that and that she had told Gardner several times he needed to talk to the Plaintiff to offer her a position. Osborne said Gardner told her he did not have time to talk to the Plaintiff.

The Plaintiff also says that she was never told by anybody at the school that she did not have a job for the next year. (Pl. Dep. 96, DE 30-3.) However, because she had never been offered a position and believed she did not have a job, she decided to retire to avoid losing her benefits. On June 30, 2005, Osborne told Gardner the Plaintiff was coming into the office. According to Osborne, Gardner saw the Plaintiff but did not speak to her at that time. While in the office, the Plaintiff submitted her letter of resignation.

**C.     Elements of an ADEA Claim**

It is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It is also unlawful for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of such individual's age." § 623(a)(2).

A person can prove age discrimination under the direct method or by using the indirect, burden-shifting method established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 762 (1973). The Plaintiff presents her argument under the indirect method of proof.

Under the indirect method, to survive summary judgment, a plaintiff must first set forth evidence sufficient to make a prima facie case of discrimination. A prima facie case is established when evidence shows that 1) the plaintiff was in the protected age group; 2) the plaintiff met her employer's expectations; 3) the plaintiff suffered an adverse employment action; and 4) similarly situated younger employees were treated more favorably. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir. 1999). If the plaintiff shows a prima facie case of age discrimination, the burden shifts to the defendant to submit evidence that the employer had a legitimate, nondiscriminatory motive for taking the action it did with respect to the plaintiff. *Id.* If the defendant meets its burden, the burden shifts back to the plaintiff to show the employer's proffered justification to be pretextual. *Id.* "The ultimate burden remains with the plaintiff-employee to persuade the trier of fact that the defendant-employer intentionally

10

discriminated against [her] based upon [her] age." *Id.* (quoting *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998)). If no reasonable fact-finder could agree that the employer was motivated to take its adverse action by the employee's age, summary judgment is warranted.

**D.      Plaintiff's Retirement from her Grade Level Secretary Position**

The parties agree that the Plaintiff meets the first two requirements of a prima facie case: she was in the protected class and she met her employers' expectations. The main point of contention is whether the Plaintiff suffered an adverse employment action. The Plaintiff does not argue that being moved to the ninth grade secretary position from the eleventh grade secretary position was an adverse employment decision. Rather, the Plaintiff argues that she suffered an adverse employment action because she was forced to retire from her grade level secretary position. The Court accepts as true the Plaintiff's statement that she retired because she believed she did not have a job due to the fact she was never told she would have a grade level position and her position was combined with the twelfth grade secretary position. However, the evidence does not show the Plaintiff was forced to retire. The Plaintiff stated that she was told by Gardner over the phone and by his secretary Osborne that she would have a job. The Plaintiff also stated that nobody told her she would not have a job. There is no evidence that any of the Defendant's employees wanted her to retire.

The Plaintiff's complaints focus on Gardner's inaction in notifying her of what job she would have. The Plaintiff says that when she came into the office on June 30, 2005, Gardner did not acknowledge her. She also says he should have called her to tell her. However, she admits

11

she talked to him on the phone and that he told her she had a job. It is undisputed that Gardner intended for the Plaintiff to work the following year as the ninth grade secretary. The Court is aware of no case law suggesting it is an adverse employment decision to not tell the employee what job the employee will be working during a restructuring, when the employee has already been told she will have a job.

The Plaintiff argues she met her burden to show that similarly situated employees were treated more favorably by showing that a younger worker was given the plaintiff's job responsibility. In this case, Karen Yanis was given the responsibilities of the eleventh grade secretary. However, the Plaintiff was not terminated. The complained of adverse employment action is that she was forced to retire. The Plaintiff does not attempt to show that any of the conduct constituting the "forced retirement" was applied to her and not to any other similarly situated younger workers.

Even if the Plaintiff could make a prima facie case, the Defendant has given a legitimate reason for its conduct and the Plaintiff cannot show it to be pretextual. Gardner explained his lack of initiative as due to his being busy with interviews and filling positions and to wanting to avoid an unpleasant conversation. He knew the Plaintiff was upset at not being chosen to be treasurer after he had suggested she apply. He planned to do so after she returned. He never did tell the Plaintiff that she would be ninth grade secretary because he says he did not have an opportunity. After returning from vacation, she came to the school and dropped off her notice of retirement. It appears from the evidence that this was the only time Gardner saw her after she returned from vacation.

The Plaintiff has no evidence suggesting Gardner's explanation to be pretextual. The

Plaintiff claims his failure to call her and tell her suggests he is lying about his reasons. The Plaintiff ignores the fact that he did talk to her on the phone and told her she would have a job. There is absolutely nothing to suggest Gardner is lying. No evidence suggests Gardner wanted the Plaintiff to retire. "The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). There is insufficient evidence to make reasonable an inference that Gardner intended to cause the Plaintiff to be in doubt as to her job status so that she would retire.

Because the Defendant did not take any adverse employment action against the Plaintiff, and because there is no evidence suggesting the Gardner's explanation for not talking to the Plaintiff about her position as ninth grade secretary is pretextual, summary judgment is granted on the Plaintiff's claims that she was forced to retire.

### E.   Plaintiff's Application for Treasurer

The Plaintiff's claim that she was not hired for treasurer because of her age also fails. The Plaintiff satisfies at least two of the four requirements to make out a prima facie case. The Plaintiff is in the protected class of older workers, and she suffered an adverse employment act when she was not hired as treasurer.

The Plaintiff cannot show she met her burden to show she was qualified for the position. The Plaintiff claims she was at least as qualified for the position as Monks was. She had extensive experience in bookkeeping because she maintained the accounts in purchasing and shipping and receiving from 1988 until she retired. The Defendant disputes the Plaintiff's qualification, arguing that she was not qualified because she could not be trusted with

confidential documents. Monks is not similarly situated to the Plaintiff because the Plaintiff has provided no evidence suggesting Monks had shared confidential documents with other employees or engaged in any other behavior suggesting she could not be trusted with confidential documents.

The Plaintiff's failure to preserve the confidentiality of the reorganization document is also given as the Defendant's legitimate, nondiscriminatory reason for not hiring the Plaintiff. The Defendant's proffered legitimate reason for not hiring the Plaintiff is intertwined with the Plaintiff's qualification for the job, and so the Court combines the pretext analysis with the qualification prong analysis. *See Jones v. Union*, 302 F.3d 735, 742 (7th Cir. 2002).

Gardner recommended that the Plaintiff be hired to take the treasurer position. Gabriel thought that she had shown a failure to respect the Defendant's confidentiality by faxing to another secretary documents related to reorganization, which she should not have had access to. The position of treasurer required an ability to keep information confidential. For this reason, Gabriel said he would not be in favor of hiring the Plaintiff to be treasurer. According to the Defendant, Monks was qualified for the position, having been bookkeeper for most of the school year at the Defendant's career center, and she had excellent evaluations in her other positions with the school.

Because the Defendant stated a nondiscriminatory reason for not hiring the Plaintiff, the Plaintiff has the burden to show the Defendant's reason to be pretextual, that is, dishonest. The Plaintiff argues that before Gardner was told by Gabriel about the confidentiality issue, she interviewed for only ten to fifteen minutes with Gardner, and Monks received an interview lasting at least half an hour. According to the Plaintiff, this shows that Gardner was favoring

14

Monks before he knew of the confidentiality issue, suggesting that the Defendant's justification for not hiring the Plaintiff is dishonest. However, the Plaintiff ignores the obvious explanation for Monks's longer interview: Gardner had little need to interview the Plaintiff because he knew her well and had determined that she would be a good treasurer. He had already told her several times she should apply for the position. After the interviews, Gardner called Gabriel to recommend the Plaintiff. It is not reasonable to infer that the Defendant is lying about its justification for hiring Monks instead of the Plaintiff from the fact that Monks had a longer interview with Gardner, when it is established that the Plaintiff was Gardner's first choice.

The Plaintiff's other argument is that her training and experience was so superior to that of Monks that it is reasonable to infer that she was not hired because of her age. The Plaintiff had bookkeeping experience from maintaining the purchasing accounts and the shipping and receiving accounts since January 1988. The differences in qualifications are not so dramatic as to make it reasonable to infer the Defendant must by lying about why it did not hire the Plaintiff. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738 (7th Cir. 2006) ("'Evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.'" (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006)).  Monks had worked with the school since 1994, and she received excellent evaluations. She performed well as the bookkeeper for the Career and Technology Center, where she worked for most of the previous school year. There is nothing to suggest that Monks was not well qualified for the position. Also, Monks had one qualification the Defendant lacked: Monks had not shown any

15

difficulty handling confidential documents.

Because the Plaintiff has not carried her burden to present evidence that would allow a reasonable jury to find the Defendant's justification for not hiring her is pretextual, summary judgment is granted to the Defendant on the Plaintiff's claim that she was not promoted to treasurer because of her age.

**F.      Plaintiff's Applications for Other Positions**

The Plaintiff claims that, because of her age, she was not hired for the two executive assistant positions and a secretary/receptionist position. The Plaintiff abandons her claim regarding the secretary/receptionist position because the person hired was older than she was. With regard to the two executive assistant positions, the Defendant does not dispute that she meets two of the four elements of a prima facie case of discrimination. The Defendant argues that she cannot show she was qualified for the positions or that similarly situated younger employees were hired. The executive assistant, Support Services position required an associate's degree in office management or comparable training. The executive assistant, Personnel position required an associate's degree in office management, human resources experience, or comparable training.

The Plaintiff argues that though she did not have an associate's degree, she did have comparable training and should have been considered for the executive assistant positions. The Plaintiff asserts that her 18 years of experience is comparable to an associate's degree in office management and that there is a material issue of fact as to whether the Plaintiff's experience was sufficient to meet the requirements of the executive assistant positions.

The Plaintiff is incorrect. It is the Plaintiff who has the burden of producing evidence showing her experience was sufficient to qualify her for the position. The Plaintiff does not point to any elements of her experience that make it equivalent to an associate's degree in office management. It is not clear from the record whether her experience involved managing an office. The Plaintiff's mere assertion that they are equivalent is not sufficient to show that she was qualified. The Plaintiff's failure to present any evidence showing her experience to be equivalent to an associate's degree means there is no genuine dispute on the question. Also, the Plaintiff has not submitted any evidence that the younger persons hired to the positions were similarly situated with respect to education or training.

Even if the Court assumed the Plaintiff could set forth a prima facie case, the Plaintiff's claim would still fail because she has no evidence that the Defendant is lying about its reason for not hiring her. The Defendant offers as its legitimate, nondiscriminatory reason for not hiring the Plaintiff its belief that the Plaintiff did not have an associate's degree in office management or equivalent experience. It is the Plaintiff's burden to produce evidence calling into doubt the honesty of this reason. The Plaintiff has no evidence suggesting the Defendant's given reason is a pretext. Therefore, the Plaintiff has not met her burden of presenting evidence calling into question the honesty of the Defendant's proffered nondiscriminatory reason for not hiring the Plaintiff, and summary judgment must be granted.

## ORDER

The Defendant's motion for summary judgment is GRANTED. The Plaintiff's claim that she was forced to retire because of her age, and her claim that she was not hired for any of the

positions she applied for because of her age are DISMISSED. No claims remain pending in this case and judgment will be entered in favor of the Defendant.

SO ORDERED on March 12, 2007.

/s/ Theresa L. Springmann
THERESA L. SPRINGMANN, JUDGE
UNITED STATES DISTRICT COURT